UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LISA R. MAURICE,<br><br>                Plaintiff,<br><br>  v.<br><br>PETER O'ROURKE, Acting Secretary of Veterans Affairs; and<br>UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,<br><br>                Defendants. | C18-1 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on defendants' motion for summary judgment, docket no. 21, as amended, docket no. 25-1. Having reviewed all papers filed in support of, and in opposition to,[1] the motion, the Court enters the following order.

**Background**

From April 2005 until December 2015, plaintiff Lisa R. Maurice worked for the United States Department of Veterans Affairs ("VA") as a dental hygienist. *See* Order at 1 (docket no. 16). During the period 2014 – 2015, plaintiff was supervised by Gregg Hyde, DDS, Chief of the Dental Service at the VA Puget Sound Healthcare System, and Brock Satoris, DDS, MS, Associate Director of Dental Services. *See* Hyde Decl. at ¶¶ 1

---

[1] Defendants' motion, docket no. 29, to strike certain materials attached to plaintiff's counsel's declaration is DENIED.

ORDER - 1

& 2 (docket no. 23). On December 22, 2015, after being interviewed by VA police,[2] plaintiff left the worksite early and never returned. *Id.* at ¶ 12. On January 7, 2016, plaintiff applied for workers' compensation, claiming that she had been injured on the job. Fedderly Decl. at ¶ 4 & Ex. A (docket no. 24). In her application, plaintiff indicated that, as a result of her interaction with VA police, "[e]very time [she] think[s] about going back to work [she] can't breath and start[s] to hyperventilate," and that her "hands tremble and shake uncontrollably at the thought of the VA dental where [she] treat[s] patients with fine instruments in their bodies." *Id.* at Ex. A (docket no. 24-1 at 3).

On January 8, 2016, plaintiff faxed a handwritten note to Drs. Hyde and Satoris that read:

> Per my doctors [sic] orders, due to my medical condition stemming from the Dec. 22, 2015[,] police incident, I will not be returning to work, until further notice from my physicians.

Ex. C to Hyde Decl. (docket no. 23-3); *see also* Hyde Decl. at ¶ 14 (docket no. 23). In February 2016, plaintiff unsuccessfully sought a dental hygienist position in the VA's Seattle dental clinic; plaintiff had previously been working at the VA's American Lake

---

[2] Prior to this interaction with VA police, plaintiff had unsuccessfully demanded a paygrade increase and sought a transfer. *See* Hyde Decl. at ¶¶ 4 & 7 (docket no. 23). On July 23, 2015, she received from Dr. Satoris written counseling on inappropriate, "confrontational and disrespectful" conduct. Ex. A to Hyde Decl. (docket no. 23-1). On December 17, 2015, plaintiff wrote on the white board in the staff breakroom a movie suggestion, namely "Horrible Bosses," a film about three friends who conspire to murder their respective bosses, one of whom is a dentist. *See* Hyde Decl. at ¶¶ 10 & 11 (docket no. 23); *see also* Maurice Dep. at 27:15-25 & 30:11-31:4, Ex. B to Morehead Decl. (docket no. 25-4). On December 18, 2015, Dr. Satoris received emails from two of his colleagues expressing concern about this behavior, having viewed it as a veiled threat; one of these emails was copied to Dr. Hyde. *See* Ex. B to Hyde Decl. (docket no. 23-2). After consulting with his superior (the Chief of Surgery), as well as "Employee Labor Relations," Dr. Hyde concluded that he was not qualified to determine whether plaintiff posed any threat, and he contacted VA police. Hyde Decl. at ¶ 11 (docket no. 23).

ORDER - 2

clinic.  *See* Fedderly Decl. at ¶ 5 (docket no. 24); Hyde Decl. at ¶ 7 (docket no. 23).  On March 7, 2016, plaintiff sent an email to Drs. Hyde and Satoris that stated:

> Good Morning, I am writing to let you know that I am still on medical leave due to my condition and under medical provider(s) care, it will be unfair for my patients not to be able to have the required treatment at the utmost quality care that I had always provided prior to the police incident December 22, 2015[,] at American Lake Dental Clinic.
>
> I hope and pray that I can cope with this and heal.  VA support is important at this time.  I will keep you up to date.

Ex. D to Hyde Decl. (docket no. 23-4).

On June 15, 2016, in response to a letter from Dr. Satoris directing plaintiff to report for duty, *see* Ex. C to Fedderly Decl. (docket no. 24-3), plaintiff indicated in writing that she was "not cleared medically to return to American Lake Dental Clinic where [she] was a victim of trauma" in December 2015.  *See* Ex. D to Fedderly Decl. (docket no. 24-4).  In September 2016, plaintiff applied for disability retirement, stating that the onset date of her disability was December 2015.  *See* Ex. B to Fedderly Decl. (docket no. 24-2).  In May 2018, plaintiff was deemed by the United States Office of Personnel Management to be "disabled from [her] position as a Dental Hygienist due to Panic Disorder without Agoraphobia," and plaintiff's request for disability retirement under the Federal Employees Retirement System was approved.  *See* Ex. B to Stockwell Decl. (docket no. 26-1 at 39-41; docket no. 27 at 36-38).

On January 1, 2018, plaintiff commenced this action.  *See* Compl. (docket no. 1).  On a motion brought by defendants Peter O'Rourke, Acting Secretary of Veterans Affairs, and the United States Department of Veterans Affairs, the Court dismissed certain claims with prejudice and other claims without prejudice, and granted plaintiff

ORDER - 3

leave to amend to allege a claim under the Rehabilitation Act against solely Acting Secretary O'Rourke. <u>See</u> Order (docket no. 16). Instead of complying with the Court's ruling, plaintiff asserted in her Amended Complaint a single claim under the Civil Service Reform Act ("CSRA") against both Acting Secretary O'Rourke and the VA. Defendants now seek summary judgment.

**Discussion**

**A.     Summary Judgment Standard**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. <u>Id.</u> at 255, 257. When the record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>see also</u> <u>Celotex</u>, 477 U.S. at 322.

**B.     Civil Service Reform Act**

Plaintiff's CSRA claim appears to encompass matters over which the Court does not have jurisdiction, and seems to contain an imbedded claim under the Rehabilitation Act. <u>See</u> Am. Compl. at ¶ 4.3 (docket no. 17) (citing § 501 of the Rehabilitation Act,

29 U.S.C. § 791); see also 5 U.S.C. § 2302(d)(4) (indicating that the CSRA "shall not be construed to extinguish or lessen . . . any right or remedy available to any employee . . . in the civil service under . . . section 501 of the Rehabilitation Act of 1973"). The portions of plaintiff's CSRA claim seeking relief for injury and raising paygrade disputes are not within the scope of the Court's earlier grant of leave to amend and cannot be pursued in this litigation. The Rehabilitation Act component of plaintiff's CSRA claim simply lacks merit.

### 1. **Injury and Wage Claims**

Plaintiff accuses Drs. Hyde and Satoris of causing her disability. See Am. Compl. at ¶¶ 3.14, 4.14, & 4.16 (docket no. 17). Any claim for compensation with respect to any injury plaintiff might have suffered during the course of her employment with the VA is within the sole purview of the Secretary of Labor pursuant to the Federal Employees' Compensation Act ("FECA"). See 5 U.S.C. §§ 8102, 8116(c), 8121, & 8128(b); see also Figueroa v. United States, 7 F.3d 1405, 1407 (9th Cir. 1993) ("The remedies provided under FECA are exclusive of all other remedies against the United States for job-related injury or death.").

Plaintiff also refers to the refusal to upgrade her on the General Schedule ("GS") Payscale from GS-9 to either GS-10 or GS-11. See Am. Compl. at ¶ 3.3-3.4 (docket no. 17); see also Resp. at 1 (docket no. 26) (indicating that plaintiff alleges a "failure to promote" under the CSRA). With regard to plaintiff's paygrade and/or any allegation that she suffered retaliation for challenging her designation as GS-9, any request for corrective action is a matter within the discretion of the Office of Special Counsel and/or

the Merit Systems Protection Board pursuant to the CSRA. *See* 5 U.S.C. §§ 1214(a)(3), 2302, & 7513(d); *see also* Mangano v. United States, 529 F.3d 1243, 1246 (9th Cir. 2008) (the CSRA's remedial scheme is "exclusive and preemptive," and thus, the CSRA's administrative procedures are a federal employee's "only remedy" for conduct falling within the scope of the CSRA's "prohibited personnel practices").

To the extent plaintiff is attempting to litigate in this action issues that must be raised in the manner specified in FECA or the CSRA, defendants' motion for summary judgment is GRANTED and any such claims are DISMISSED without prejudice, and without leave to amend, for lack of jurisdiction.

**2.       Rehabilitation Act**

To present a prima facie disability discrimination claim, plaintiff must show that (i) she is disabled, (ii) she is otherwise qualified, *i.e.*, able to perform the essential functions of the job with or without reasonable accommodation, and (iii) she suffered discrimination because of her disability. *See* Walton v. U.S. Marshals Serv., 492 F.3d 998, 1005 (9th Cir. 2007), *superseded on other grounds by statute as recognized in* Nunies v. HIE Holdings, Inc., 908 F.3d 428, 434 (9th Cir. 2018); *see also* Nunies, 908 F.3d at 433. Plaintiff was not disabled prior to December 22, 2015, and thus, cannot pursue a Rehabilitation Act claim for events occurring before that date.[3]  *See* Tr. at 12:13-14, Ex. A to Morehead Decl. (docket no. 25-3) (plaintiff told an Equal Employment

---

[3] In her response to defendants' motion for summary judgment, plaintiff alludes to a hostile work environment, but the actions on which she bases such legal theory all predate her disability. *See* Resp. at 3 & 10-11 (docket no. 26). To the extent plaintiff instead claims that her disability resulted from any hostile work environment, her sole remedy is to pursue relief under FECA.

ORDER - 6

1  Opportunity investigator that she "was fine and perfectly healthy until after all of this

2  mess, December 22nd").

3      The only adverse employment action transpiring after plaintiff became or might be

4  regarded as disabled was the decision not to transfer her to the Seattle Clinic.  Plaintiff

5  cannot, however, establish that, in March 2016, when Devon Williams was selected as a

6  dental hygienist for the Seattle Clinic, *see* Hyde Decl. at ¶ 18 (docket no. 23), plaintiff

7  was qualified for the job.  In January 2016, in March 2016, and again in June 2016,

8  plaintiff reported that she was unable to work because of the trauma and anxiety she

9  suffered as a result of her interaction with VA police in December 2015.  Even after the

10 Seattle opening was filled, plaintiff continued to represent that she was "not cleared

11 medically to return to American Lake Dental Clinic."  Ex. D to Fedderly Decl. (docket

12 no. 24-4).

13     Plaintiff appears to suggest that she could have worked in early 2016, but just not

14 at the American Lake site, citing evaluations by Anya Zimberoff, PsyD.  In a letter dated

15 January 13, 2016, Dr. Zimberoff opined that "it will take about another month (30 days,

16 45 days total) . . . for Ms. Maurice to be able to return to work.  It is recommended that

17 she be assigned to a different work location once she returns."  Ex. C to Stockwell Decl.

18 (docket no. 26-1 at 44; docket no. 27 at 41).  On January 21, 2016, Dr. Zimberoff

19 indicated that plaintiff was not competent to work 8 hours a day, but that "a new work

20 site placement should be doable for her in 2-3 weeks."  *Id.* (docket no. 26-1 at 45; docket

21 no. 27 at 42).  Plaintiff offers no evidence that this information was contemporaneously

22 provided to the VA or that she ever requested relocation to the Seattle Clinic as a

23

reasonable accommodation.  <u>See</u> Ex. B to Fedderly Decl. (docket no. 24-2) (listing "medical retirement" as the only accommodation that plaintiff sought from the VA); <u>see also</u> <u>Lu v. Longs Drug Stores</u>, 2013 WL 5607166 at *4-*5 (D. Haw. Oct. 11, 2013) (observing that a transfer to provide an employee with a different supervisor is not a required accommodation, and ruling that a recommended transfer to place the plaintiff at a location closer to home and improve her mental well-being had not been communicated to the employer and was therefore not actionable).

Moreover, Dr. Zimberoff's estimate of when plaintiff would be able to return to work, whether at the American Lake Clinic or another location, never ripened into an opinion that plaintiff was in fact competent to do so.  To the contrary, over two years later, on May 3, 2018, Mary Galaszewski, Ph.D., under whose professional care plaintiff had been since December 22, 2015, wrote that plaintiff had been diagnosed with Panic Disorder without Agoraphobia, that she did not believe plaintiff could return to work, and that she recommended plaintiff be allowed to take a "medical retirement."  Ex. C to Stockwell Decl. (docket no. 26-1 at 50; docket no. 27 at 47).  Plaintiff will not be permitted to assert, for purposes of this litigation, that she was capable in early 2016 of working at a location other than American Lake when, for purposes of obtaining disability retirement benefits, she has represented that, because of her disability, she has been unable to work since December 22, 2015.

Plaintiff was allowed to remain on leave, was never terminated, received the disability retirement for which she applied, and has no basis to assert a Rehabilitation Act claim against the VA or its Acting Secretary.  In light of the Court's ruling that plaintiff

was not qualified for the position she sought in early 2016, the Court need not address the other grounds for summary judgment articulated by defendants.

**<u>Conclusion</u>**

For the foregoing reasons, the Court ORDERS:

(1) Defendants' motion for summary judgment, docket no. 21, as amended, docket no. 25-1, is GRANTED. Plaintiff's FECA and CSRA claims are DISMISSED without prejudice for lack of jurisdiction, and plaintiff's Rehabilitation Act claim is DISMISSED with prejudice.

(2) The trial date and all related deadlines are STRICKEN.

(3) The Clerk is DIRECTED to enter judgment consistent with this Order, to send a copy of this Order and the Judgment to all counsel of record, and to CLOSE this case.

IT IS SO ORDERED.

Dated this 25th day of June, 2019.

／s／ Thomas S. Zilly
Thomas S. Zilly
United States District Judge